Homer A. BRADSHAW, Jack P. Cleveland, Dr. Ralph Dorner, Arnold Fletcher, Robert Knox, Earl Lowry, Dr. Robert Stickler, Dr. Paul W. Thielking, John H. Neiman, and Charles E. Reeves, Jr., Appellants,

v.

WAKONDA CLUB, Appellee.

No. 90–1302.

Court of Appeals of Iowa.

Aug. 27, 1991.

James B. Smith of Shirley, Smith, Shirley & Powell, Perry, for appellants.

Joseph Barron and Roland D. Peddicord of Peddicord, Wharton, Thune, Foxhoven & Spencer, P.C., Des Moines, for appellee.

Heard by OXBERGER, C.J., and HAYDEN and HABHAB, JJ., but decided en banc.

HABHAB, Judge.

Plaintiffs are honorary members of the Wakonda Club, an exclusive country club facility located in Des Moines, Iowa. Plaintiffs joined the club many years ago. At the time, the club operated under rules which provided any member over the age of seventy who had been a member for twenty consecutive years could surrender his membership to the club and become an honorary member.

By surrendering membership, a member would lose equity ownership ($2,000) in the club. In exchange, honorary members would receive free use of the club facilities. Plaintiffs insist this program was part of the club's inducement to recruit new members. It is undisputed this was the rule at the time each plaintiff joined the club.

By the time each plaintiff qualified for honorary membership, the rules required members to reach age seventy and be a member for twenty-five years. It likewise is undisputed that all plaintiffs met these qualifications by the time of trial.

In 1972 the Wakonda Club reincorporated under Iowa Code Chapter 504A. After its reincorporation, its articles of incorporation vested the board of directors with the power to provide for memberships and the fees to be paid by those members. This article is identical to Article IV of the 1958 Articles of Incorporation.

Beginning in 1974, the board of directors passed a series of resolutions. These required all persons becoming honorary members after May 1, 1975, to pay dues of $24 per month. The dues gradually increased over the next several years. By 1987, the dues for honorary members was fixed at $100 per month, one-half the dues paid by Senior "A" members.

Between February 1981 and June 1988, each plaintiff chose to surrender his regu-

lar membership to attain honorary member status. Each has paid his dues. The total dues paid range from $4,409 to $8,378. Plaintiffs made no complaint about their dues until 1988. That year the board changed the dues from a specific dollar amount to one-half the dues paid by regular members.

In granting defendant's motion for summary judgment, the trial court rejected plaintiff's petition. The petition sought relief based on equitable and promissory estoppel, specific performance, declaratory judgment, breach of contract, and negligent misrepresentations.

In sustaining the summary judgment motion, the trial court found the club's rules constituted a contract between the parties. It reasoned the contract gave the board of directors the power to change the dues. The trial court did not believe the change in 1988 was so material and substantial as to deprive the plaintiffs of a substantial right. It rejected the idea that plaintiffs had a vested right in 1958 to become honorary club members in the future at the 1958 rates.

Generally, the defendant's summary judgment motion claimed the club is entitled as a matter of law to set dues and fees for its members. The basic thrust of the defendant's motion is there are no genuine issues of material fact which bear upon defendant's right to assess dues to its members.

The plaintiffs counter by arguing there are genuine issues of material fact. They claim there is a dispute whether they have a vested lifetime membership in the club. They additionally urge a change from zero dues to any amount is a radical and fundamental change in the purpose of the corporation. Finally, plaintiffs contend there is a dispute whether they relied on the defendant's representation there would be no dues when they became honorary members in choosing to join the Wakonda Club. The true question is whether these disputes are ones of material fact which prevented the trial court from granting defendant's motion for summary judgment. We affirm in part and reverse in part.

## I. *Summary Judgment.*

■ Review of equity cases is de novo. Iowa R.Civ.P. 4. In reviewing a grant of summary judgment under Iowa Rule of Civil Procedure 237(c), the question is whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Suss v. Schammel*, 375 N.W.2d 252, 254 (Iowa 1985). The party resisting a motion for summary judgment must set forth specific facts showing there is a genuine issue for trial. The resisting party may not rely solely on legal conclusions to show there is a genuine issue of material fact justifying denial of summary judgment. *Amco Ins. Co. v. Stammer*, 411 N.W.2d 709, 711 (Iowa 1987). Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984). We examine the record in the light most favorable to the party opposing the motion for summary judgment to determine if movant met his or her burden. *Matherly v. Hanson*, 359 N.W.2d 450, 453 (Iowa 1984). We turn to the individual issues.

## II. *Vested Rights.*

The trial court found, and we agree, there is a factual dispute as to whether a lifetime membership was created by the parties' understanding. The existence of this factual dispute leads us to the critical issue of whether there is any evidence showing the plaintiffs acquired vested rights in a lifetime or honorary membership in the Wakonda Club. If there is such evidence, is it sufficient to create a genuine issue of material fact?

■ It is undisputed the articles of incorporation, by-laws, and club rules and regulations create a contractual relationship between the parties. *See Swanson v. Shockley*, 364 N.W.2d 252, 255 (Iowa 1985); *Berger v. Amana Society*, 250 Iowa 1060, 1066, 95 N.W.2d 909, 912 (1959). We conclude that whether this contractual relationship created vested rights which are to

include lifetime or honorary membership provisions is a question for the finder of fact. Further, if such vested rights were in fact created, there is the additional factual question of whether substantial rights of the plaintiffs are affected.[1]

It appears the trial court interpreted the documents in effect during the pertinent period to form a single unitary contract. The court found the articles of incorporation, bylaws, rules and regulations, and statutes governing the Wakonda Club corporation constituted a single contract with the members of the club. However, we believe the meaning and effect of the rules and regulations that were in place at the time the plaintiffs became members are a fact question. We are hesitant to say as a matter of law that such club rules and regulations are not entitled to separate consideration when the facts and the resulting law may lead to different conclusions.

The language of certain articles of incorporation and rules and regulations are of particular importance in this dispute. The relevant portion of the articles of incorporation provides:

> [The Board of Directors] shall have power to provide for membership fees and to fix the dues for each class of membership and shall have all powers which may be necessary and proper to be exercised in conducting the affairs of the corporation.

The Wakonda Club's 1956 rules and regulations provided:

> Any resident-member who has reached the age of 70 and has been a member for twenty (20) consecutive years may, *at his option*, surrender his membership to the Club and become an honorary member for the term of twenty years. An honorary member will be entitled to all of the privileges of the Club but will pay no dues....

█ The trial court construed the language contained in the instruments under consideration to produce one homogenous contract. The court found the single contract to be a bilateral contract in which the

members paid dues for membership. The member was expected to realize that the dues-free status of the honorary membership could be changed at any time prior to their election to surrender their membership and become honorary members.

The club's articles of incorporation appear to create a dues-for-membership contract. On the other hand, the club's rules and regulations arguably contemplate some type of option, which may constitute a contract enforceable sometime in the future or a vested right.

We determine a factual dispute exists concerning the interpretation of the language of the various documents. This is especially true when the alleged oral representations are considered. We make no findings as to the existence or terms of any contract.

We find the district court's grant of summary judgment to be premature. We reverse on this issue. We remand for trial on the breach of contract and vested rights claim.

### III.  *Negligent Misrepresentation.*

The plaintiffs claim negligent misrepresentation on the part of the club. Wakonda Club, the defendant here, retorts in its brief: "Plaintiffs [sic] only contention is that they believed this rule [relating to honorary membership] would never change." We have reviewed the record, including plaintiff's answers to interrogatories. Our review reveals the plaintiffs claim to have relied upon written representations of club rules, as well as oral representations of club officers and members at the time they joined the club. This in and of itself creates an issue of fact.

A negligent misrepresentation occurs when:

> (1) **One who, in the course of his business profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject**

---

1. We note the evidence shows the plaintiffs were charged fairly substantial sums of money in contravention of this alleged contractual relationship.

to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in subsection (3), the liability stated in subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552 (1977).

■ There are certain hurdles the plaintiffs must overcome to withstand summary judgment on this issue. First, the statements must be made in the course of the maker's business. Second, they must show the statements relied upon were false when made. Third, the statements must be made for the guidance of others in their business transactions. Fourth, there must be evidence of negligence by the maker. Fifth, the statements must be made for the benefit of the persons harmed. Sixth, the maker must intend the information to influence the recipient in a specified or similar transaction. Finally, the recipients must show their reliance was reasonable or justified. *See* Restatement (Second) of Torts § 537.[2]

We have no hesitation in concluding the purported statements were made in the course of the Wakonda Club's business. Thus, the first criteria is fulfilled. However, the plaintiffs' negligent misrepresentation claim fails to overcome the second hurdle.

■ There is no question when the statements were made to the plaintiffs, the statements were true. At the time the men joined there were no dues for honorary members. However, as the trial court recognized, the contract entered into by the parties included a provision for the board of directors to change the dues for any member as it saw a need. This provision was in existence at the time plaintiffs joined the club. It is undisputed this provision was contained in the articles of incorporation which became part of the contract. *See Swanson v. Shockley*, 364 N.W.2d 252, 255 (Iowa 1985). It is also undisputed that all members receive copies of the club rules, articles of incorporation, and the by-laws annually.

We also determine the plaintiffs have not shown evidence of negligence on the part of the Wakonda Club. Again, the statements when made were true. There was no showing the Wakonda Club knew or should have known the policy regarding honorary membership would change some fifteen or twenty years later.

The plaintiffs failed to show any material issue of fact with regard to negligent misrepresentation. We determine the trial

2. The Restatement (Second) of Torts provides:
TITLE C. JUSTIFIABLE RELIANCE
§ 537. General Rule
The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if, but only if,
(a) he relies on the misrepresentation in acting or refraining from action, and
(b) his reliance is justifiable.
Comment:
a. The recipient of a fraudulent misrepresentation can recover from the maker for his pecuniary loss only if he in fact relies upon the misrepresentation in acting or in refraining from action, and his reliance is a substantial factor in bringing about the loss (See § 546 and Comments). If the recipient does not in fact rely on the misrepresentation, the fact that he takes some action that would be consistent with his reliance on it and as a result suffers pecuniary loss, does not impose any liability upon the maker.
b. The recipient must not only in fact rely upon the misrepresentation, but his reliance must be justifiable. The rules that determine whether he is justified in reliance upon various types of misrepresentations are stated in §§ 538 to 545 and in § 547.

court's summary judgment ruling on negligent misrepresentation was justified. We affirm on this issue.

### IV. *Equitable and Promissory Estoppel.*

The plaintiffs claim the Wakonda Club is prevented by both equitable and promissory estoppel from changing its honorary membership regulations in regards to them. We deal with each species of estoppel in turn.

■ A. *Equitable Estoppel.* The Iowa Supreme Court has set of the elements of equitable estoppel.

> In order to prove equitable estoppel in applicable *to a given* situation, a party is required to show: (1) that the defendant has misrepresented or concealed material facts, (2) that the party seeking application of the principle lacked knowledge of the true facts, (3) that the defendant intended *the* party to act on the basis of the misrepresentation or concealment, and (4) that the party relied upon the misrepresentations or concealment to his or her prejudice or injury. Absent evidence proving any of these elements, the doctrine of equitable estoppel is not applicable.

*Folkers v. Britt,* 457 N.W.2d 578, 582 (Iowa 1990) (citations omitted).

Like the supreme court in *Folkers,* we determine the district court was correct in ruling the plaintiffs have failed to support their equitable estoppel claim. The plaintiffs produced no evidence showing the Wakonda Club engaged in misrepresentation or concealment, nor that they lacked knowledge of the true facts. We affirm the district court's summary judgment on the equitable estoppel issue.

■ B. *Promissory Estoppel.* The plaintiffs further argue the doctrine of promissory estoppel prevents the Wakonda Club from altering its honorary membership regulations as pertains to them. We discussed the elements of promissory estoppel in a recent case.

> The elements of promissory estoppel are: (1) a clear and definite oral agreement, (2) proof that the party urging the doctrine acted to his detriment in relying on the agreement, and (3) finding that the equities support enforcement of the agreement.

*In re Scheib Trust,* 457 N.W.2d 4, 8 (Iowa App.1990) (citations omitted).

The plaintiffs allege a clear and definite oral agreement. The Wakonda Club denies such an agreement ever existed. There is arguably evidence supporting either side. Thus there is a genuine issue of fact on the first element.

At least one plaintiff alleges he joined the Wakonda Club rather than the Des Moines Country Club, partially in consideration of the more attractive honorary membership provisions of the Wakonda Club. Thus, at least as to the single member and possibly others, there is a genuine issue of fact on detrimental reliance, the second element.

As to whether the equities support enforcement of the agreement, the third element, we believe this is best left to the trier of fact after a full evidentiary hearing on the matter. There is not enough information in the present record to adjudicate enforcement of the alleged agreement.

We reverse the district court's summary judgment on promissory estoppel. We remand for trial on this issue.

### V. *Summary.*

We affirm the district court's grant of summary judgment on the issues of negligent misrepresentation and equitable estoppel. We reverse the summary judgment on the issues of breach of contract/vested rights and promissory estoppel.

Costs of this appeal taxed one-half to appellant and one-half to appellee.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

SCHLEGEL and SACKETT, JJ., take no part.