# IN THE SUPREME COURT OF IOWA

No. 07–1634

Filed May 21, 2010

**NATIONWIDE AGRI-BUSINESS INSURANCE COMPANY,**

Appellant,

vs.

**JIM GOODWIN, DOUG STALLEY,** Personal Representative of the ESTATE OF KLEVER BRIONES, On Behalf of Himself and the Estate, and **CORINA DE PALACIOS,**

Appellees.

---

Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.

Insurer appeals adverse summary judgment ruling holding insurer had coverage under its automobile liability policy for claim made against insured who had loaned rental vehicle to another at time of accident. **REVERSED AND REMANDED.**

John B. Grier of The Grier Law Firm, Marshalltown, for appellant.

Jeffrey A. Sar of Baron, Sar, Goodwin, Gill & Lohr, Sioux City, for appellee Jim Goodwin.

James J. Biscoglia of LaMarca & Landry, P.C., Des Moines, for appellees Doug Stalley, Estate of Klever Briones, and Corina De Palacios.

**TERNUS, Chief Justice.**

In this declaratory judgment action, the district court ruled the appellant, Nationwide Agri-Business Insurance Company, had coverage under an automobile liability insurance policy for claims made against its insured, Jim Goodwin, arising out of an accident that occurred when Goodwin loaned a vehicle he had rented to his uncle, Jack Jolin. Nationwide claims on appeal there is no coverage because Goodwin was not "using" the vehicle at the time of the accident so as to fall within the definition of "insured," and in any event, coverage was excluded by a provision excluding liability of an insured using a vehicle without a reasonable belief he is entitled to do so. Nationwide also asserts there is no genuine issue of material fact with respect to Goodwin's reasonable expectations claim, and it is entitled to judgment as a matter of law on that claim. We hold the exclusionary provision precludes coverage for the damage claims made against Goodwin, and as a matter of law, Goodwin's reasonable expectations claim has no merit. Therefore, we reverse the district court's summary judgment in favor of Goodwin and remand this case for entry of summary judgment in favor of Nationwide.

## I. Background Facts and Proceedings.

Jim Goodwin rented an automobile from Alamo Rent-A-Car. On the second page of the rental contract signed by Goodwin, the following provision appeared: "NO ADDITIONAL DRIVERS ARE AUTHORIZED TO DRIVE THE VEHICE WITH THE EXCEPTION OF THE DRIVERS LISTED BELOW." No additional persons were listed. The "rental agreement jacket" contained additional terms and defined "authorized drivers" and "prohibited uses." In relevant part, it stated:

> Authorized Drivers: I am the authorized driver if I have a valid driver's license, am named on the front of the rental agreement and meet all of your rental requirements.

An additional authorized driver is authorized only if they pay an additional driver charge and that person has a valid driver's license and is named on the front. ALL OTHER DRIVERS ARE UNAUTHORIZED. I am responsible for any losses or damages which occur while the vehicle is in the possession of any driver.

Prohibited Uses and Violations: The following uses of the Vehicle are strictly prohibited by you. The vehicle may not be used:

. . . .

(G) if the driver is anyone other than a[n] authorized driver . . . .

Goodwin signed the rental agreement, stating he agreed to the terms in the agreement as well as the terms on the rental agreement jacket.

During the rental period, Goodwin allowed Jolin to operate the rental car for Jolin's personal use. Goodwin admitted in response to requests for admissions that "Jack Jolin's use of the rental vehicle was in violation of the terms and provisions of the rental agreement." He also admitted that "[a]t the time [he] lent the vehicle to Jack Jolin, [he] did not believe he was authorized by the rental agreement to lend the vehicle to Jack Jolin." Tragically, while Jolin was operating the rental car with Goodwin's permission, Jolin struck two pedestrians, killing one, Klever Briones, and seriously injuring Briones' wife, Corina De Palacios. Goodwin was not a passenger in the rental car at the time of the accident.

As a result of the accident, the injured party and the personal representative of the estate of the deceased party brought a claim for damages against Goodwin, the rental car company, Jolin, and Goodwin's personal automobile insurance carrier, Nationwide. Nationwide, in turn, filed a petition against these parties requesting a declaratory judgment that it had no duty to defend or indemnify Goodwin.[1] Nationwide

---

[1]Nationwide also contended its policy provided no coverage to Jolin. That issue is not part of this appeal.

claimed the policy definition of "insured," which included the named insured when using any auto, did not encompass Goodwin because Goodwin was not using the rental car when he loaned it to Jolin.[2] Nationwide also cited an exclusion for any insured "[u]sing a vehicle without a reasonable belief that the 'insured' is entitled to do so." In his answer, Goodwin relied on the doctrine of reasonable expectations, claiming he "reasonably expected there to be coverage for any car rented by him."

Nationwide and Goodwin filed motions for summary judgment, each claiming there was no genuine dispute as to any material facts, and judgment should be rendered as a matter of law. The district court granted Goodwin's motion for summary judgment and denied Nationwide's motion. The court ruled Goodwin was using the rental vehicle when he loaned it to Jolin and so qualified as an insured under the policy. The court also decided the exclusion did not apply because "Alamo's provision in its agreement with Goodwin is only a means to protect Alamo in the case of an accident, and the provision was not intended to limit the scope of Goodwin's own insurance coverage." Therefore, the court concluded, "Goodwin had a reasonable belief he was entitled to use the car in this manner as a matter of law." Having found coverage under the policy, the court did not address Goodwin's reasonable expectations argument.

Nationwide filed this appeal, arguing the district court erred in concluding there was coverage under its policy. Goodwin argues there is coverage under the terms of the policy, and in any event, he is entitled to

---

[2]The policy also provided coverage for an insured's "ownership" and "maintenance" of any auto. Goodwin acknowledges he did not own the rental vehicle and was not engaged in maintenance of the vehicle at the time of the accident.

coverage under the doctrine of reasonable expectations. We conclude that, assuming Goodwin's loaning of the vehicle to his uncle constituted use within the meaning of the policy definition of "insured," the policy exclusion applies because, as a matter of law, Goodwin could not have had a reasonable belief he was entitled to use the vehicle in this manner. We also hold Nationwide is entitled to summary judgment on Goodwin's claim based on the doctrine of reasonable expectations. For these reasons, we reverse the district court's judgment and remand for entry of a declaratory judgment that Nationwide has no duty to defend or indemnify Goodwin in the suit brought against him by De Palacios and the Briones Estate.

**II.  Scope of Review**.

A ruling on a motion for summary judgment is reviewed for the correction of errors of law. *Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 681 (Iowa 2008). "To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law." *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999).

> The moving party is entitled to a judgment as a matter of law "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." An issue of fact is "material" only when the dispute involves facts which might affect the outcome of the suit, given the applicable governing law. The requirement of a "genuine" issue of fact means the evidence is such that a reasonable jury could return a verdict for the non-moving party.

*Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008) (quoting Iowa R. Civ. P. 1.981(3)) (citations omitted). If the only conflict concerns the legal consequences flowing

from undisputed facts, entry of summary judgment is appropriate. *Garofalo v. Lambda Chi Alpha Fraternity*, 616 N.W.2d 647, 650 (Iowa 2000).

### III. Governing Legal Principles.

The crux of the disagreement in this case centers on the appropriate construction and interpretation of the Nationwide policy.

> The construction of an insurance policy is the process of determining the policy's legal effect; interpretation is the process of determining the meaning of the words used in the policy. "When the parties offer no extrinsic evidence on the meaning of policy language, the interpretation and construction of an insurance policy are questions of law for the court."

*Thomas*, 749 N.W.2d at 681 (quoting *Lee v. Grinnell Mut. Reins. Co.*, 646 N.W.2d 403, 406 (Iowa 2002)) (citation omitted). "In the construction of insurance policies, the cardinal principle is that the intent of the parties must control; and except in cases of ambiguity this is determined by what the policy itself says." *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 618 (Iowa 1991). "The test for ambiguity is an objective one: 'Is the language fairly susceptible to two interpretations?'" *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991). "Only when the policy language is susceptible to two *reasonable* interpretations do we find an ambiguity." *Kibbee v. State Farm Fire & Cas. Co.*, 525 N.W.2d 866, 868 (Iowa 1994).

This court has held that "[a]n insurer assumes a duty to define any limitations or exclusionary clauses in clear and explicit terms." *Hornick v. Owners Ins. Co.*, 511 N.W.2d 370, 374 (Iowa 1993). "Thus, when an exclusionary provision is fairly susceptible to two reasonable constructions, the construction most favorable to the insured will be adopted." *Thomas*, 749 N.W.2d at 682. "Nonetheless, if there is no

ambiguity, the court 'will not "write a new contract of insurance" ' for the parties." *Id.* (quoting *Stovers v. State Farm Mut. Ins. Co.*, 189 N.W.2d 588, 591 (Iowa 1971)) (citation omitted). "If exclusionary language is not defined in the policy, we give the words their ordinary meaning." *Farm & City Ins. Co. v. Gilmore*, 539 N.W.2d 154, 157 (Iowa 1995). "An exclusion that is clear and unambiguous must be given effect." *Id.*

### IV. Policy Coverage.

Nationwide agreed to "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." An "insured" is defined as "[y]ou or any 'family member' for the . . . use . . . of any auto." "You" refers to "[t]he 'named insured' shown in the Declarations." Goodwin is a " 'named insured' shown in the Declarations." Thus, Goodwin is an "insured" if he was using the auto at the time of the accident. Goodwin argues that he was using the rental car at the time of the accident because he "gave Jolin authorization and permission for [the] specific trip" that Jolin was on when Jolin hit the pedestrians. He asserts "[t]he word 'use' in [the] policy includes [his] act of permitting Jolin to drive the rented auto." We assume, without deciding the issue, that Goodwin is correct: He was using the vehicle within the meaning of the insuring clause when he allowed Jolin to drive it.

Nationwide contends that, even if Goodwin was using the vehicle at the time of the accident so as to qualify as an insured, coverage is precluded by the following exclusion that appears in the insurance contract between Nationwide and Goodwin: "We do not provide Liability Coverage for any 'insured' . . . [u]sing a vehicle without a reasonable belief that the 'insured' is entitled to do so." Nationwide asserts Goodwin did not have a reasonable belief that he was entitled to allow Jolin to

drive the rental car. We agree the determinative issue is whether Goodwin had a reasonable belief he was entitled to use the vehicle in this manner, i.e., loan it to Jolin.

Nationwide relies on the terms of the rental car agreement to support its contention that Goodwin could not have reasonably believed he was entitled to loan the rental car to his uncle. The rental agreement contained the following pertinent language:

> Prohibited Uses and Violations: The following uses of the Vehicle are strictly prohibited by you. The vehicle *may not be used*:
>
> . . . .
>
> (G) if the driver is anyone other than a[n] authorized driver . . . .

(Emphasis added.) As noted previously, it is undisputed that Jolin was not an authorized driver, that "Jolin's use of the rental vehicle was in violation of the terms and provisions of the rental agreement," and that "[a]t the time Jim Goodwin lent the vehicle to Jack Jolin, Goodwin did not believe he was authorized by the rental agreement to lend the vehicle to Jack Jolin." Goodwin claims his noncompliance with the terms of the rental agreement should have no impact on his insurance coverage with Nationwide, as the rental agreement only governed the rights and responsibilities of Goodwin and Alamo as to each other.

Although we have not previously applied the exclusion in question to a situation involving a rental car, we considered a nearly identical exclusion in *Gilmore*, 539 N.W.2d at 157–58, a case involving a second permittee. In that case, the insurer relied on a provision "stating coverage is not provided for any person '[u]sing a vehicle without a reasonable belief that that person is entitled to do so.'" 539 N.W.2d at 157. Like the policy here, the policy at issue in *Gilmore* did not define

the terms "entitled" or "reasonable belief." *Id.* Therefore, we looked to the ordinary meaning of these terms and, concluding there was more than one reasonable interpretation, adopted the interpretation most favorable to the insured. *Id.* (concluding exclusion was ambiguous because "entitled" could refer to "legal right or authority" or to " 'consent' or 'permission' "). Relying on the ordinary meaning of these terms, we held "coverage is excluded when a person is using a vehicle without a reasonable belief that he or she had *permission of the owner* or apparent owner to do so." *Id.* (emphasis added).

As our decision in *Gilmore* makes clear, whether an insured had a reasonable belief he was entitled to use a borrowed or rented vehicle in a particular way depends upon the scope of the permission given by the owner of the vehicle. *See Van Zwol v. Branon,* 440 N.W.2d 589, 593 (Iowa 1989) (rejecting "initial permission" rule, which holds " 'that when permission to use a vehicle is initially given, subsequent use short of actual conversion or theft, remains permissive within the meaning of the omnibus clause, even if such use . . . was outside any limitation placed upon the initial grant of permission' " (quoting *Milbank Mut. Ins. Co. v. U.S. Fid. & Guar. Co.,* 332 N.W.2d 160, 162 (Minn. 1983))); *cf. Grinnell Mut. Reins. Co. v. State Farm Mut. Auto. Ins. Co.*, 558 N.W.2d 176, 180–83 (Iowa 1997) (considering permissive use under omnibus clause of uninsured motorist coverage); *Schneberger v. Glenn,* 176 N.W.2d 782, 785 (Iowa 1970) ("Where the owner of a vehicle involved in an accident has specifically and expressly forbidden his first permittee to delegate authority for its use to anyone, then no implied authority to third parties or second permittees can be found."). Here, the owner of the vehicle was Alamo, and therefore, we must examine the scope of Alamo's consent to Goodwin's use of the rental car to determine whether Goodwin could

have reasonably believed his use here was authorized. For this reason, we reject Goodwin's argument that the rental agreement is irrelevant to the determination of coverage under the Nationwide policy.

Goodwin also claims the exclusion is ambiguous. He argues that "if Nationwide intended to take away coverage for cars rented by their insureds when those insureds let others use them contrary to a rental agreement, it could have said so in clear and explicit terms." Because Nationwide failed to clearly and explicitly exclude coverage for such situations, Goodwin asserts, "the matter must be resolved against Nationwide Insurance as a matter of law." Similarly, he cites to Nationwide's failure to define "reasonable belief" or "entitled," asserting nothing could be "more ambiguous [than] to not define the terms of an exclusion."

These arguments misperceive the legal principles governing the interpretation of ambiguous policy provisions. The fact that an exclusion could be more specifically tailored to a particular set of facts does not mean the insurer cannot rely on a generally worded exclusion that encompasses various factual scenarios. In addition, the rule that ambiguities must be resolved against the insurer is not applied in a vacuum. A court interpreting and applying an ambiguous exclusion must give the terms of the exclusion their common meaning and adopt that interpretation of the exclusion most favorable to the insured. Here, the only alternative interpretation suggested by Goodwin is that "[p]erhaps the exclusion was only intended to apply to actual operators." But Goodwin has failed to identify what language in the exclusionary provision can reasonably be interpreted to support such a limited application of the exclusion. In fact, the exclusion applies to an "insured" using the vehicle, and the term "insured" is defined in the

policy to include the named insured—Goodwin. In summary, Goodwin has failed to identify a reasonable interpretation of the exclusionary language that is more favorable to an insured than the meaning we gave to this provision in *Gilmore.* Therefore, Goodwin's claim for coverage must be judged against this meaning: "coverage is excluded when a person is using a vehicle without a reasonable belief that he or she had permission of the owner or apparent owner to do so."[3] *Gilmore*, 539 N.W.2d at 157.

Turning to the facts of the present case, we think the conclusion is inescapable that Goodwin could not have reasonably believed that he was entitled to use the vehicle in the manner he did, i.e., loaning the vehicle to an unauthorized driver. Goodwin did not own the vehicle Jolin was driving at the time of the accident, and so Goodwin did not necessarily have the full array of rights that accompany ownership. Goodwin's rights to the vehicle were obtained from Alamo. Therefore, we look to the rental agreement to determine the scope of Goodwin's right to use the vehicle, as the rental agreement defined the parameters of the permissive use granted to Goodwin by Alamo. As this agreement made clear, Goodwin did not have Alamo's permission to loan the vehicle to an unauthorized driver. In other words, Goodwin was not entitled to loan the rental car to Jolin because he did not have "permission of the owner . . . to do so." *Id.*

---

[3]The Briones Estate and De Palacios argue coverage would be lost under this interpretation of the policy should a lessee use a valet parking service at a hotel or restaurant. Although we do not decide whether the posited situation would be covered, we note the brief surrender of the vehicle to another for purposes of valet parking is qualitatively different from loaning the vehicle to another person for that person's use. Hence, whether an insured might reasonably believe he was entitled to allow another person to park his rental car for him poses a different question than the issue presented here.

We also conclude that to the extent Goodwin believed he could let unauthorized persons drive the rental car under circumstances such as those presented here, such a belief was not reasonable. As Goodwin readily admitted, Jolin's operation of the rental vehicle violated the restrictions placed on Goodwin's use of the vehicle by its owner. More importantly, Goodwin admitted he did not believe he was authorized by the rental company to loan the vehicle to Jolin. Based on these undisputed facts, we do not think a reasonable jury could find that Goodwin had a reasonable belief he was entitled to loan the vehicle to Jolin. Therefore, as a matter of law, the exclusion applies, and coverage is precluded.

## V. Reasonable Expectations.

Goodwin contends that, even if coverage does not exist under the terms of the policy, he is entitled to coverage under the doctrine of reasonable expectations. This doctrine applies "if the exclusion (1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction." *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 112 (Iowa 1981). "However, as a prerequisite to the applicability of this doctrine, the insured must prove 'circumstances attributable to the insurer that fostered coverage expectations' or show that 'the policy is such that an ordinary layperson would misunderstand its coverage.'" *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 311 (Iowa 1998) (quoting *Benavides v. J.C. Penney Life Ins. Co.*, 539 N.W.2d 352, 357 (Iowa 1995)); *accord Monroe County v. Int'l Ins. Co.*, 609 N.W.2d 522, 526 (Iowa 2000) (noting reasonable expectations doctrine "is a narrow doctrine that is primarily employed when the insurance coverage provided eviscerates terms explicitly agreed to or is

manifestly inconsistent with the purpose of the transaction for which the insurance was purchased").

In the summary judgment proceedings, Goodwin filed his own affidavit that set forth his expectations of coverage. He did not, however, reveal any statements or other circumstances attributable to Nationwide, other than the policy provisions discussed above, that fostered his coverage expectations. *See Am. Family Mut. Ins. Co. v. Corrigan*, 697 N.W.2d 108, 118 (Iowa 2005) (rejecting reasonable expectations argument in part because there was no evidence of any conduct by the insurer that generated an expectation of coverage by the insured). Focusing, then, on the policy itself, we think an ordinary layperson would not misunderstand the coverage provided, and limited, by these policy provisions. *See Farm Bureau Life Ins. Co. v. Chubb Custom Ins. Co.*, 780 N.W.2d 735, 743 (Iowa 2010) (rejecting reasonable expectations argument, concluding "the clarity of the exclusions in question" supported the conclusion "a reasonable person could not have understood coverage would exist").

Goodwin does not identify in his affidavit any way in which he misunderstood the policy exclusion. He merely quotes the insuring clause from the policy and then states that he "expect[ed] that this language means just what it says." But insurance policy provisions are not interpreted in isolation. *See Thomas*, 749 N.W.2d at 682; *Grinnell Mut. Reins. Co. v. Employers Mut. Cas. Co.*, 494 N.W.2d 690, 692 (Iowa 1993), *called into doubt on other grounds by Corrigan*, 697 N.W.2d at 113 n.1. The insuring clause must be read in conjunction with the policy exclusions. *Cf. Harlan v. Valley Ins. Co.*, 875 P.2d 471, 472–73 (Or. Ct. App. 1994) (holding in determining whether driver was insured under terms of policy, exclusion of person using vehicle without a reasonable

belief person was entitled to do so must be considered). If the policy is not considered as a whole, exclusions would never be enforceable because by definition exclusions limit the coverage that would otherwise be provided by the insuring clause. Goodwin's abstract understanding that *any* use of the rental vehicle by him would be covered by the policy does not give rise to reasonable expectations of coverage. *See Essex Ins. Co. v. Fieldhouse, Inc.*, 506 N.W.2d 772, 777 (Iowa 1993) (holding insured's "general assertion that it expected a liability policy to cover such negligent acts [as insured was alleged to have committed]" would not support application of reasonable expectations doctrine). Therefore, as a matter of law, Goodwin is not entitled to coverage under this theory. *See Shelter Gen. Ins. Co. v. Lincoln*, 590 N.W.2d 726, 729 (Iowa 1999) (holding when insured has failed to show circumstances attributable to the insurer that fostered coverage expectations or that an ordinary layperson would misunderstand the exclusion, summary judgment against the insured is appropriate).

### VI. Summary and Disposition.

There is no dispute that Goodwin's loaning of the rental vehicle to his uncle was prohibited by the owner of the vehicle. There is also no disagreement that Goodwin knew this use of the rental vehicle was unauthorized. We conclude there is no genuine issue that Goodwin did not have a reasonable belief he was entitled to use the rental vehicle by loaning it to an unauthorized driver. Therefore, as a matter of law, there is no coverage under the Nationwide policy due to the exclusion of coverage when the insured is "[u]sing a vehicle without a reasonable belief that the 'insured' is entitled to do so."

In addition, Goodwin has failed to place in the record any facts that would support coverage under the doctrine of reasonable

expectations. He has identified no conduct attributable to Nationwide that fostered coverage expectations under the circumstances presented here, nor has he convincingly explained how an ordinary layperson reading the pertinent policy provisions would misunderstand the coverage provided. Therefore, as a matter of law, he cannot rely on the doctrine of reasonable expectations.

The district court erred in granting Goodwin's motion for summary judgment and in denying Nationwide's motion for summary judgment. We reverse the district court's judgment in favor of Goodwin and remand this case for entry of a declaratory judgment that Nationwide has no duty to defend or indemnify Goodwin for the claims arising out of Jolin's use of the vehicle Goodwin rented from Alamo.

**REVERSED AND REMANDED.**